On behalf of the people, Mr. Richard S. Linden. Thank you. Ms. Moran, you may proceed. Good morning, Your Honors, and may it please the Court, I am Assistant Appellate Defender Rachel Moran on behalf of Marquise Thomas. This case presents the rare situation where a named suspect to a murder repeatedly confessed to that murder, and the State not only refused to believe the confessions and charged Mr. Thomas instead, but actively prevented the jury who decided Thomas' fate from ever hearing a word about those confessions. But this Court doesn't need to reach the issue of whether Thomas received an unfair trial. The question for this Court is simply whether Thomas' claim that appellate counsel was ineffective for failing to argue that Nathaniel Howell's confession should have been admitted at trial is arguably meritorious. The answer to that question is yes. Counsel for the State argues that the claims that you're raising on appeal were not the claims that were included in the post-conviction petition. Yes, he does, Your Honor. This claim is not, neither of the claims on appeal are forfeited. The standard according to the Illinois Supreme Court in People v. Hodges is that the petitioner must, and I quote, allege enough facts to make out a claim that is arguably constitutional. In this case, Mr. Thomas, first of all, he explicitly argued ineffective assistance of appellate counsel. In the title of his claim, he argued that appellate counsel was ineffective specifically for failure to present available facts and evidence that Nathaniel Howell confessed to committing the murder. In the body of that claim, he pointed out that the Court suppressed Minister Frick's testimony that Howell confessed to him about the murder. He also attached an affidavit from himself saying that Minister Frick's testified that Howell said he had committed the murder. He attached a second affidavit saying that Howell confessed to him to committing the murder and reiterating that Howell confessed to Minister Frick's. When you say committing the murder, the statement to the minister was rather vague, wasn't it? It was not, Your Honor, and that's a distortion of the record as the state points it out in its brief. What we have here is Minister Frick's testimony that Nathaniel Howell sat down and said he felt tormented about his past and then said he had committed a murder about a month ago that someone else named Blackie was charged with. And it's undisputed that Mr. Thomas' nickname is Blackie. Nathaniel Howell then described the murder and specifically he testified that he was hanging out with a group of guys in the Black Hawk Housing Project, which is where this happened, and that he shot someone. He also, Minister Frick's also testified that Nathaniel Howell admitted to speaking with detectives just a few days later and telling detectives that he committed that murder. And what's important is the corroboration the detectives provide, and specifically Detective Eric Harris. He testified that he sat Nathaniel Howell down and said, I want to talk with you about the murder of Levante Nunn. He didn't say, I want to talk to you about a shooting or a murder. He said the murder of Levante Nunn. And Eric Harris, who is a state's witness, testified there was no way they could have been talking about any other murder. So that link removes any doubt that he was talking about the murder of Levante Nunn. Absolutely. The two most important facts. First of all, it's important that Howell describe the murder accurately in accord with what this murder was. But it's also the two most important facts that he said the person charged was Blackie, which Mr. Thomas is Blackie. And that Eric Harris said, I want to talk to you about the murder of Levante Nunn. And Nathaniel Howell, the first words out of his mouth were, I did it. So it would really be absurd to say that it's not clear which confession or which murder he was talking about. Assume that he did make that confession and he made that statement to the pastor. How is it not privileged? Your Honor, the Illinois clergy privilege statute and 34 years of undisputed case law have stated that either party can invoke the privilege. The clergyman or the confessor. But if the clergyman is willing to waive the privilege, it is up to the confessor, the person who made the confession, to prove every element of the privilege by a preponderance of the evidence. And the critical element of this privilege is that whether the disclosure was enjoined by the rules and practices of the minister's religion. Not Nathaniel Howell's. It's the minister. And that is 30 years of undisputed precedent and the plain language of the statute. Here, Minister Fricks testified unrebutted. The disclosure of the confession did not violate the rules of his Pentecostal faith. He was an ordained Pentecostal minister. And to use his words, he has allowed the Pentecostal faith, leaves it up to the minister to disclose if he feels it is necessary. Did anybody during this hearing, more importantly, the defendant, bring out anything or look into this Pentecostal faith? Or did they just take it at the word of this pastor? Your Honor, there's not evidence from other people. But I would respectfully dispute that it's the defendant whose job is to do that. It's clear from the language of the statute in the case law that it would be either the state or the Department of Child and Family Services who is attempting to invoke the privilege in that case. It's clear. And what's important is the trial court said he acknowledged that the minister had testified unrebutted that he was allowed to disclose. And the disclosure specifically was not enjoined by the Pentecostal faith. The trial court's ruling was based on an entirely different and erroneous conclusion, which is the trial court said I acknowledge that the minister said he's allowed to disclose. But I would presume in this case that Nathaniel Howell believed it was confidential. And I'm going to find it privileged on that basis. Assuming that we were to find that the petition set forth the gist of the constitutional plan and remand the case for a second stage hearing, would you agree that NH still has the right to come in and assert privilege, to intervene and assert privilege? Your Honor, the appropriate analysis for the post-conviction proceeding, the question is whether appellate counsel is ineffective. So I would agree that Mr. Howell could attempt to assert the privilege if the case were remanded for a new trial. Yes. Assuming that we agree with your argument that the case should be remanded for a second stage review, the trial court should not have dismissed the petition, NH can still come in and assert the privilege and put on whatever evidence is available regarding the Pentecostal church's rules and practices under the statute? He could not do that in an evidentiary hearing, but he could if the evidentiary hearing were, if a new trial were granted. However, if this court, if this court wants to consider facts like that, the state, the state criticizes the reference to what it calls a foreign periodical, which Mr. Thomas used in his opening brief. That's actually the, and perhaps I should have explained this better, frankly, but the treatise cited in Mr. Thomas' opening brief is probably the leading treatise on this issue. Richard Hammer, who is the author, it's a four-volume treatise. He is an ordained Pentecostal minister and the National General Counsel for the Assemblies of God, which is the nation's largest Pentecostal denomination. And I've spoken with Mr. Hammer and cited his treatise, but what it says is that most Protestant faiths and specifically Pentecostal denominations do leave it up to the individual conscience of the minister. So certainly if a new trial were granted, Nathaniel Howell could, could attempt to assert the privilege and could bring in anyone he can try to bring in. It's certainly an odd circumstance that the minister who's ministering to inmates who probably have things on their chest that they'd like to get off their chest, it's up to him to disclose whether or not, you know, it's totally up to the minister to decide whether or not he's going to reveal those confidences to law enforcement. It's a little bit unusual, Your Honor, but that is actually the language of the Illinois statute. And so it is, it is frankly an unusual statute and it is, from the research I did, different than most states. All the states have different statutes. Illinois is a little bit unusual in that respect that it allows, it leaves the minister leeway to disclose a confession if it's not enjoined by the rules of the religion. In his interview or in his, in his conversations with N.H., he told N.H. this is in confidence, according to the transcript. He did not, Your Honor. What he said is feel free to express yourself, which could be a suggestion. A fair interpretation. He said feel free to express yourself. He also said he never revealed any of this to anybody else except the defendant and the defendant's attorneys. Correct? Yes, Your Honor. I think if the court is, well, two responses if I may. I think for one thing, that's not really a consideration for this court at first date proceeding. But another, if the court is concerned about the propriety of the minister's behavior, it should take into account that Nathaniel Howell then went to detectives just approximately three days later and said the same thing. So although ordinarily one would presume perhaps this 16-year-old believed the conversation would be confidential, it is telling that he then disclosed it to the law enforcement where he certainly had no expectation of confidentiality. As encouraged by the pastor, if I recall. The pastor said you should probably talk to the authorities. So I don't think it was a coercive situation, but that was the pastor's response was probably surprise and you should probably talk to the authorities about this. But then the detectives came. Nathaniel Howell had been named as a suspect by the detectives. They did not turn on the videotape. And they said, we want to talk to you about the murder of Lavontae Nunn. And Nathaniel Howell said, I did it. So the question of whether he believed it even, it's not even a particularly relevant consideration. But if it were, the question of whether he believed it was confidential is, I would say, questionable at best. But what is important is this court's own decision in People v. Bull, which had been decided a good 17 years before the trial court's ruling. And in Bull, the court said, the statute does not provide that it is the penitent's perception which determines when this confidence arises. So if we're looking at whether appellate counsel was ineffective in the way he failed completely to argue this on direct appeal, that's what matters. What matters is that this court had governing precedent contradicting the trial court's ruling. And appellate counsel entirely neglected to make use of that precedent or even present this court with really the facts of the case. This court, appellate counsel only even mentioned the critical confession of the minister twice, once in a single sentence in his opening brief, and then once in a footnote in which he said he assumed that the confession was privileged. And that's grossly ineffective representation when the way the case was presented to the trial court, it's pretty clear that that's not true. It seems like everybody had a perception of what the penitent clergy privilege was that maybe wasn't as accurate under the case law. Exactly, Your Honor. I think that it's perhaps a slightly more obscure faith or at least one less known to the parties in this case. And the court just said, well, he said it's confidential, but I think it's up to the person who made the confession. The only basis for the exclusion of this evidence was, in fact, the perception of NH, correct? Exactly. Because the trial court found that the burden had shifted to NH. No evidence was presented to rebut the clergyman's testimony. And that was the only basis, correct? I agree, yes. Exactly, Your Honor. I want to get back to the first issue very quickly. I mean, the two claims that you're raising on appeal were not specifically raised in the post-conviction petition, correct? They were not raised in the same manner, Your Honor. The facts were certainly raised. Would you say that they were implicit in the post-conviction petition? Absolutely, Your Honor. Well, let me ask you this, though. I mean, if you say they were implicit, I mean, People v. Cole, which is a very recent First District case, says, you know, we read Jones to hold that implicit claims in the defendant's post-conviction petition may not be raised for the first time on appeal. Your Honor, if I may, what is explicit in the petition is all of the facts necessary to decide this claim and an explicit allegation of ineffective assistance of counsel for failing to get this confession introduced. Now, he didn't say specifically that appellate counsel was ineffective for not properly arguing the clergy penitent privilege. But he did say that appellate counsel was ineffective for failing to get before the trial court the facts of these confessions. He did attach the transcript of Minister Frick's testimony. He did say that Minister Frick would have testified that Nathaniel Howell committed the murder. So it is a very different situation than People v. Cole or People v. Mars, which is the only other case the State really cites on this point in its brief. Well, it seems like Cole is closer than Mars because Cole, at least they're raising the same issue. I mean, what was raised in the petition is the same issue being raised on appeal. It's just pointing the finger at whether it was trial court or trial counsel or appellate counsel. I mean, Mars, it's a totally different issue. It's compulsory joinder versus the sufficiency of the indictment. Yes. But Cole seems a little more on point than Mars. And the issue with Cole basically is who you're pointing the finger at. If you don't point the finger at the right person, even though you're raising the same claim, it's implicit, but it's not going to fly on appeal. Follow your successive petition. Well, Mr. Thomas did point his finger at the right person. He pointed his finger at appellate counsel. He just didn't articulate his claim in the same legal manner I am now. But he absolutely pointed his finger at appellate counsel and said appellate counsel is ineffective. And in People v. Brown, which is the Illinois Supreme Court, Brown said petitioners are not required to plead specific legal arguments, as long as the petition and the record together support the gist of a constitutional claim. And so that is a little bit more relevant then. And Cole is additionally distinguishable because, as Your Honor noted, the petitioner in Cole never pointed his finger at appellate counsel at all. He never made a single claim of ineffective assistance of appellate counsel in any way. And that's the holding in Cole. We're not going to invent a claim of ineffective assistance of appellate counsel where the petitioner never made it. All right. Thank you, Counsel. Thank you, Thomas. Counsel, are you with us? Thank you. Mr. London, you may proceed. Good morning, Your Honors, Counsel. Your Honors, the people believe the issue is whether the statute prohibits revelation of confidences told to a clergy person in his capacity as spiritual advisor, not whether or not we should have a mini-trial based on the tenets of each specific religion. The people disagree that years of precedent say the opposite. So Boalt was wrongly decided? No, Boalt is correctly decided. Boalt doesn't say that. Boalt says that it's the perception of defendant as to whether or not the clergy person was his spiritual advisor. It says nothing about perception of defendant as to the tenets of the religion. In Boalt, we had a case where the clergy person basically says, I could not be the spiritual advisor. I specifically advised the defendant I could not be a spiritual advisor because he's lied to me previously. All of the cases cited, Dirks, McNeil, Snyder v. Poplett, stand on the proposition of whether or not the clergy person was acting in a capacity as a spiritual advisor. Let me ask you this. Do we even get to that point, though, at this point on a pro se post-conviction? I mean, the issue that we have to decide here is whether or not the defendant raised the gist of the constitutional claim to get to the second stage. I mean, do you think we even need to really get to the nitty gritty of that? Well, yes and no. Why yes and no? Yes and no in that if the gist of the claim is ineffective assistance of appellate counsel and the people disagree that by raising ineffective assistance of appellate counsel, that opens the door to ineffective assistance of appellate counsel for any reason. The suggestion, Cole, is similar. You can't just say appellate counsel was ineffective for reason A, but therefore I've raised sufficient because appellate counsel is also effective for reason B. The fact that it relates to NH doesn't relate to the testimony of Reverend Frick. So it's related in some form. It doesn't raise the specific argument. And is it sufficient to get past the fact that an unsophisticated pro se defendant is not supposed to? The people believe not. But even more so, you then have to get to the second prong, even assuming that it's not forfeited. The question is, is there sufficient to show prejudice? And that's where you need to get into the issue of whether or not this is privileged. If it is privileged, then counsel was completely accurate. And all of the parties all along assumed that it was privileged. Apparently Analyze was privileged. And counsel, appellate counsel, trial counsel, trial judge, it wouldn't have to be raised if it was clear in everyone's mind that this was correctly privileged. And again, contrary to defendant's position, the people believe that the case law says the opposite, that this is privileged. The individual, the clergy person was acting as his spiritual advisor. He confessed. If that is not the case, then the people basically, why don't we hire a Pentecostal minister in every detention facility in the state to take confessions and then bring in? Let me, I'm not going to interrupt you because it's circular. Okay. What about this language? And this is the statute and having dealt with this statute in the past. When the clergyman does not object to testify, the burden is on the person asserting the privilege to show that disclosure isn't joined by the rules or practices of the relevant religion. There is no case in Illinois interpreting what that means or discussing what that means. The closest case that we were able to find was People v. Campobello, which basically suggests course of discipline versus rules of or tenets of the religion. In that case, this court, relying on admittedly a fairly ancient Minnesota case, said that the privilege is such that the discipline traditionally joined by all clergy persons of all religions. If your religion requires you to accept confession as part of your spiritual advising, that is what the statute means. There's never been a specific discussion on what tenets of the religion means. And again, I don't think it's a circular argument, Your Honor. The only evidence was the testimony of the minister. Correct. You're arguing outside the record. I'm arguing what the findings of the trial judge were, what the meaning of the statute is. I'm talking about evidence, not the findings of the trial court judge. The evidence that's in the record. Correct. The only evidence in the record regarding the rules of the religion was undisputed. Would you agree that the burden has shifted to N.H.? No. Why not? Let me rephrase that. The burden has shifted to N.H. to demonstrate that Fritz was a spiritual advisor, not that the rules of a specific religion. That would require a mini-trial in basically every case as to the tenets, not only of Pentecostal, but I guess each sect, I assume Roman Catholic would be the only clear religion that confessional bars. So basically, whether you're Jewish, whether you're Pentecostal, any other form of Christianity, would have to come in and basically say, let's have a mini-trial, let's bring in Mr. Hammer. I'm sorry, I'm not personally familiar. Let's have testimony of individuals in the community as to Mr. Fritz' past practices. Let's discuss exactly whether or not this particular faith, this particular sect. But I mean, we're talking about a statutory construction issue here. And we're talking about, of course, the first rule is what's the plain language of the statute. And the plain language of the statute talks about such religious body or the religion which he or she professes, being the clergy. Correct. So we're not talking about this Minnesota case in general, like religion. If basically your religion accepts confession in some fashion, or counsels in some fashion, then we look to the entire body of religious, you know, whatever, entity to see whether or not in general, well, that's not what the statute says. I mean, the plain language of the statute, as Bo points out, is that particular religion. If you're talking about that particular sect or that particular whatever, you change the statute if you want to change the statute. But it seems to call for a mini-trial if the burden's shifted. Or you'd have a lot of conversions to follow. Well, that or what's going to happen is, I mean. You're certainly going to not have anyone in the jail being willing to talk to anybody, which defeats the purpose of both this and all statutes. I agree that the layman. It's a great public policy argument, but let's talk statute. I mean, we're not here to make public policy. Nobody appointed us to do that. We're not suggesting, and the court in Campobella didn't suggest that. What the court in Campobella said is that it is the concept of, I'm sorry, Campobella did read it more broadly. Campobella said, what is the history, what is the concept of this protection? The clergy penitent privilege basically is there to let a penitent unburden his soul. They do analyze in Campobella, this court analyzed, what does it mean? And they looked at the foreign jurisdiction to say, basically, what does it stand for? The specific language of the statute is probably pretty poorly worded. It cannot disagree with that. Does that stand for the proposition that you must have a mini-trial? The people do not believe it does. If this court were to find otherwise, well, obviously, then we need to do that. I strongly believe that defendant would be saying the exact opposite if Mr. Frick's came in and testified as to what defendant said. And let's make it clear in this case. Defendant, for lack of a better term, confessed and made admissions in this case to Minister Frick as well. And in deciding, in the trial judge deciding whether or not there was a privilege, counsel pointed out, well, so are we then to say that by allowing Mr. Frick to testify as to what the declarant said, is he now going to be allowed to testify as to what defendant said? Defendant, I mean. He did, didn't he? I'm sorry? He did, didn't he? He did at the hearing. At the hearing. You know, counsel suggested that that should not be allowed at trial. And in the original trial, when this court dealt with the I did it statement, the fact is clear that counsel wanted just to admit the I did it portion. Didn't want to admit any other portion of the tape. Didn't want to admit the I did it was immediately recanted by Mr. Howell, who said what I meant was I was involved. I was the holder of the gun. I passed the gun along. Defendant was the shooter. Defendant committed the murder. None of that should go in. Only the I did it. Similar here. Are we just going to allow, obviously it's one step at a time, we remand it back. Shouldn't that be allowed that only Mr. Howell's statement comes in? Or does Mr. Frick have to be cross-examined on everything? Well, Mr. Frick, the defendant was there for that portion of the hearing. So that's a waiver. The state can argue waiver. That conversation comes in, doesn't it? I'm not sure if it comes in. You can't waive and then take it back because the minister testified concerning his conversation. That would be the people's position, of course. Well, it's pretty obvious that that is a waiver under any review of any privilege. These will be interesting arguments if you come back on appeal after retrial on direct review. But, I mean, again, now we take a step back to say the gist of a constitutional claim on a pro se petition under Hodges. How is there not at least something there that should go at least to the second stage? If it's not waived, if you would still have to suggest that the gist standard means that appellate counsel was ineffective for failing to raise this issue. Regardless of, I mean, obviously, you have to get first testimony. If you read Bull and you read the statute, I mean, you're an appellate attorney for this gentleman. You'd raise that, wouldn't you? Sure, I'd raise it. But, again, Bull doesn't say, doesn't really say that. I mean, Bull basically, Bull cites the language of the statute and Bull says we find that it is not the perception of the individual declarant. But we find the perception related to whether or not the clergy person acted as a spiritual advisor. There is no precedent relating to whether or not the clergy person can freely choose to testify. The language does appear to reflect that. The people are suggesting it's not merely a public policy argument. It is the opposite. It is longstanding precedent in both common and case law that suggests the exact opposite. Bull, Campobella, Dirks, all of these cases say that we assume, this court cited, we take judicial notice of the fact in Campobella that such discipline is traditionally enjoyed upon all clergymen by the practice of their respective churches. It doesn't go into an analysis of that's Roman Catholic, that's Pentecostal, that's Jewish, that's Buddhist. The fact is that that's what the statute is intended and the case law that finds otherwise says only in cases where the declarant has a misapprehension as to whether the clergy person was acting as spiritual advisor do we then overcome that burden that has shifted. Stepping away from the clergy argument for a minute, you are alleging that the arguments don't match the appeal. Correct. And you cited the Mars decision. Certainly Mars is much different and can be distinguished from the fact that it's in Mason. Mars can be distinguished. Cull is much closer. We cited, I mean, the cases that we found. Yes, Mars is different. You're raising a different issue. Doesn't Brown and all of the other cases that talk about post-conviction kind of require us and the trial court more particularly to be a little more liberal in reading a pro se post-conviction? No question. No question. The problem is where do you draw that liberal line? I mean, the defense bar in general would believe that Hodges says pretty much you raise anything, that's sufficient. Cull seems to say, wait a second, we're not going to go that far. Again, if it's implicit in, that isn't sufficient. It has to be enough. Is it enough in this case? The people believe it's not. Is there some relationship between the arguments on appeal and the post-conviction petition? Yes. Now, Mars talks about some relationship. I mean, Cull talks about striking out implicit arguments. But doesn't Cull fly in the face of Hodges, not only the holding of Hodges, this liberal holding, but the facts of Hodges? I mean, the facts of Hodges, they raised the self-defense claim, and then on appeal wanted to raise a second-degree murder claim, and the Supreme Court said close enough. It seems to be an implicit claim. The second degree seemed to be an implicit claim in the post-conviction petition regarding self-defense. But Cull, which is decided after Hodges, seems to fly in the face of that language, does it not? May I answer?  I guess. I want an answer. The people believe that, again, it is the Supreme Court that Hodges is basically operant. The Supreme Court decided under Hodges that they had an agenda. They said, basically, if you believe that, as the defense bar suggests, that anything raised, if I raise an argument again, ineffective assistance of counsel, that stands for ineffective assistance of counsel on pretty much any issue, ineffective assistance of appellate counsel on any issue. The people don't believe that that is the reading of Hodges, that Hodges has been immensely. I don't think Hodges goes that far. But in this particular case, weren't these two claims, I mean, they were basically related claims. Yeah, there's an interrelation. Right. You have ineffective assistance of counsel. You have ineffective assistance of counsel for basically failing to investigate, I believe language-wise, further Nathaniel Howell. However, it is clear from the record in this case that was done. There was investigation. There was an attempt to bring in Howell's testimony. They basically did everything that they could have, and the trial judge at this court affirmed that finding, said it isn't sufficient. Is that enough then to basically say, well, we opened the door, therefore we get everything in? You know, the people believe that it isn't, that Cole says it isn't. Is Cole inconsistent with Hodges? I don't know if it's inconsistent. It further interprets Hodges. It seems to suggest we don't agree that Hodges should be interpreted as broadly as the defense bar has suggested. Obviously, this court will determine, you know, their opinion, and we noticed the Supreme Court didn't take Cole. They didn't, I mean, so the standard shouldn't be extended. Is it contradictory on its face? We feel it's a, you know, the typical interpretation of, you know, that's how the law is conducted, and that's how it, you know, it further. If, and I might very, very briefly make a comment on the facts of the confessions themselves, because defendant seems to argue that it was clear, and may I have just another? Yeah, go ahead. We disagree. The test, the confession to both the police and to Minister Frick's was much more vague than defendant suggests. We cited the record. This court can look at the record and see exactly what it was. Defendant does correctly state that one police officer said it was clear in my mind that it was related to this case. A second police officer testified the exact opposite. It was not clear. There was another case. There was another murder at the same housing project within approximately a week. It is not clear in our mind whether or not the, Mr. Howell was talking about that case or this case. Thank you. Thank you. Ms. Moran. May it please the court. I have just two brief points on rebuttal. The first, I'd like to correct a misstatement of the facts. And then secondly, I'd like to address a misstatement of people versus bowl and its progeny. As to the first, the state argued that the defendant himself, Mr. Thomas, confessed to Minister Frick's and tried to suggest that perhaps there was a reason why we would not want Minister Frick's. I'd just like to correct that. The defendant did meet with Minister Frick's. Minister Frick's testimony about that conversation is that Marquis Thomas said he, quote, didn't do it and that a young man named Marcus, which is Nathaniel Howell's middle name, did do it. Thomas then said that he was present for a conversation in which Nathaniel Howell discussed the shooting. And Minister Frick's testified that Thomas did not mention having a role in the shooting. So the suggestion that Thomas in any way confessed to having any role at all is grossly inaccurate. Turning to the case law, the state suggests that... Let me ask you something real quickly. What could trial counsel have done differently? Your Honor, quite honestly, trial counsel did a great job. It was the court's error in this case. And so that is the distinction. Mr. Thomas blamed both appellate and trial counsel. We're just blaming an appellate counsel. And we're being candid about that. Trial counsel certainly did not, as the state suggests, assume the conversation was privileged. He did everything he could to get that conversation in, and it should have come in. Which is very similar to Mars, where the trial counsel raised compulsory joint or raised speedy trial, and appellate counsel dropped the ball out of the field. Yes, the difference there in Mars is that the defendant never complained about his appellate counsel at all. As to the state's contention that the state says, quote, there is no precedent on this issue, and that Bull did not address the question of whether a confessor has the burden of proving that disclosure would violate the minister's religion. I'd just like to quote from People v. Bull. I quoted earlier and said the statute does not provide that it is the penitent's perception. But the court then immediately goes on to say, if this were the case, there would be no reason to limit the privilege to those situations where a confession or admission is enjoined from disclosure by the rules or practices of the religious body. Usually, in these cases, the role is reversed. Exactly, and that's what's ironic about this case, Your Honor. In all of these cases, the state has consistently argued it's the defendant's job to prove this. It's the defendant's burden. Now, on that point, did you take a look at People v. Burnage, the Illinois Supreme Court case? Yes, Your Honor. In that case, the court assumed that privilege applied. Yes, it did, Your Honor. And it was a Lutheran minister who was also a psychologist who disclosed to law enforcement. And the defendant then sought to apply the exclusionary rule to exclude any other evidence that came as a result of the violation of the privilege. And the court assumed that the privilege applied. I think the distinction in Burnage, and the reason why neither of us cited it in our briefs, is that in Burnage, the question was, it was almost like an exclusionary rule situation. It was almost similar to a Fourth Amendment case, where the defendant was trying to say, he was really raising a different argument altogether, which is, could subsequent conversations be privileged, or not be privileged, but be excluded from that argument? And the premise of the beginning point of the argument is that that initial disclosure to the minister, who also happened to be a psychologist, who was torn because he knew he had an obligation to report as a psychologist, but as a minister, he felt another obligation to keep it confident. He reported it to DCFS. And then from that point forward, the investigation proceeded, and the Supreme Court said the exclusionary rule does not apply to that evidence. But the point is that Burnage does represent some authority for acknowledging that those statements in confidence to a Lutheran minister, and according to what I understand about the Lutheran ministry, it's very close to the Pentecostal in terms of what the pastor or the minister can do or should do. The court assumed that privilege applied. Your Honor, I think the key word here is assumed. It wasn't an issue in Burnage. Because the defendant prevailed in the trial court on that issue. Exactly. And so the court, I think it did assume, but it didn't address the issue. It never squarely addressed it. And that's why neither of us cited Burnage. And also, the minister was playing a dual role. He was also a psychologist with a mandatory duty to disclose. And so that also makes the issue pretty different than what they had to do. The information before the court was he felt torn between being a confessor and being a psychologist, which would implicitly lead to a court perhaps saying that if he's torn, that means that this side, being the clergy side, means they shouldn't be disclosing. That's possible, Your Honor. I would just point out that the issue was never addressed by the Illinois Supreme Court. The only thing the Illinois Supreme Court has addressed squarely is People v. McNeil, in which the court said that the confessor or the party seeking to invoke the privilege has the burden of meeting all the elements. And the privilege is both parties' privileges, the clergyman's privilege and the penitent's. Either side can invoke, but it's the party seeking to invoke that must meet the burden. Thank you, Your Honor. We'd like to thank both attorneys for their arguments today. The case will be taken under advisement. I'll take a short recess.